## DOUGHERTY COUNTY *vs.* TIFT.

[Hall, J., being disqualified, did not preside in this case.]

1. Where, in 1852, one who owned land on both sides of a stream was a member of the legislature, and as such took part in obtaining a charter to build a bridge, and subsequently became the exclusive owner of the charter, and where he built a bridge across the stream in 1858, he was not estopped from denying that he built the bridge under the charter of 1852, and asserting that he built it under the act of 1850, conferring the right on owners of land on both sides of streams to build bridges and charge tolls. Whether the bridge was built under the one law or the other is a question of fact.

2. If a person owning land on both sides of a stream built a bridge across it for the use of the public, and charged tolls under tne act of 1850, such a bridge was a public bridge; but whether it was a public or private bridge, if the county in which it is situated proceeds to take the land of such property owner and to erect another bridge, which causes damage to his property, he is entitled to just compensation; and to ascertain this, the cost of erection and the income derived from the bridge, together with all the other facts and circumstances calculated to enhance or diminish the value of the property taken or damaged, may be looked to.

3. The amount of damages found in.this case was too small, and the court committed no error in sustaining the *certiorari.*

Jackson, C J., concurred specially.

October 27, 1885.

Estoppel. Charters. Roads and Bridges. Damages. Constitutional Law. Eminent Domain. County Matters. Before Judge Bower. Dougherty Superior Court. April Term, 1885.

Reported in the decision.

J. W. Waters; C. B. Wooten, for plaintiff in error.

D. H. Pope; G. J. Wright; L. Arnheim, for defendant.

Blandford, Justice.

This was a proceeding on the part of the county of Dougherty to condemn certain lands of the defendant for the purpose of erecting a free bridge over Flint River near Albany. It was shown that Tift had in operation a toll-bridge near by, and that the erection of a free bridge would entirely destroy the value of Tift's bridge. Various estimates were submitted to the jury as to the value of Tift's bridge. The jury returned a verdict assessing Tift's damages at ten thousand eight hundred dollars. Tift sued out a writ of *certiorari* to this finding. The court sustained the *certiorari* and awarded a new trial. To this judgment exception is taken, and error assigned thereon to this court.

The main point argued and insisted on before this court is this: Tift testified that he built the bridge under the act of 1850, Code, §684, which authorizes the owner of any land through which a stream may pass, on both sides thereof, to establish a bridge or ferry thereon, at his expense, and to charge lawful toll for passing according to the rates of other bridges and ferries on the same stream, and if none, the customary rates over such streams elsewhere. The plaintiff contends that Tift built the bridge under a charter granted to him and others by the legislature in 1852; that Tift was a member of the legislature at the time, and assisted in passing the act of 1852, and

that he is estopped from denying that he built the bridge under the charter; the bridge was built in 1858. If Tift built the bridge under the charter, he is not allowed to charge toll on foot passengers and vehicles carrying farm products, which would diminish his tolls from one-half to three-fourths, and thereby diminish the value of his bridge to that extent; but if he had a right to charge the tolls which he did, and from which he derived an income of seven thousand dollars annually, then the bridge was of the value of that sum, which, at ten per cent, would produce the income which Tift derived. It is further insisted that, if Tift built the bridge under the act of 1850, and not under the charter granted in 1852, the same is a private and not a public bridge. Whether Tift accepted the charter granted by the legislature, and built and operated his bridge thereunder, is a question of fact. Tift is not estopped from denying that he accepted the charter granted to him, and from showing that he built the bridge and operated the same under another law of the state than the charter. The doctrine of estoppel does not apply in a case like this; if there is any law applying this doctrine in such a case, the learned counsel for plaintiff in error has failed to produce the same to this court.

If Tift was the owner of the land through which this stream ran, on both sides, then, under the act of 1850, he had the right to erect a bridge over the same, and charge toll for crossing thereon; and whether the bridge be public or private, it belonged to Tift, and when the county of Dougherty takes his land and erects another bridge, which causes damage to Tift's property, he is entitled to just compensation therefor. Art. 1, sec. 3, par. 1, Constitution of Georgia; Code, §5024. Whether the same is a public or private bridge, the question in such a case is, what damage has the party sustained; and to ascertain this, the cost of erection, the income derived from the bridge may be looked to and considered by the jury, together with all other facts and circumstances calculated to enhance or diminish the

value of the property taken or damaged.    Tift had the right to erect this bridge without the consent of the legislature, but the right to charge and take tolls is a right that can only exist by legislative sanction, and this privilege or franchise was conferred expressly by the act of 1850. Thus Tift acquired the right to take tolls for passage over his bridge, and it is a self-evident fact that the value of the bridge depends mainly upon the income derived from the tolls.    That a bridge situated and erected as this was is a public bridge can hardly be questioned.    The clauses of the Code following §684, as to excessive rates, the examination of rates annually, how persons are to be punished for making excessive charges, etc., down to the 691 paragraph, all seem to point to the conclusion that this is a public bridge, although belonging to Colonel Tift.

This court is of the opinion that, in any view which can be taken of the law and evidence in this case, the damages assessed by the jury are too small, and that the court committed no error in sustaining the *certiorari* and granting a new trial.

Judgment affirmed.

JACKSON, Chief Justice, stated that he concurred in the judgment affirming the sustaining of the *certiorari* and the consequent grant of a new trial, but could not concur in all the reasoning of Justice Blandford ; but that, under the facts of the case, he was inclined to the opinion that Tift was estopped from denying that he had built the bridge in question under the charter obtained by him.